# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|                              |   |                          |
|------------------------------|---|--------------------------|
| THE UNITED STATES OF AMERICA | * |                          |
| v.                           | * | Criminal No. CCB-09-400  |
| GERROD DAVIS                 | * |                          |

\* \* \* \* \*

## MOTION TO SUPPRESS EVIDENCE AND
## FOR A HEARING PURSUANT TO *FRANKS v. DELAWARE*

The Defendant, , through his attorneys, James Wyda, Federal Public Defender for the District of Maryland, and Gary W. Christopher, First Assistant Federal Public Defender, respectfully moves for an Order of this Honorable Court suppressing any evidence seized in this case pursuant to a fatally flawed search warrant and requests a hearing under Franks v. Delaware, 483 U.S. 154 (1978). Defendant asks the Court's leave to supplement this motion pending further investigation and discovery.

**I.     Procedural and Factual Context of the Search Warrant Affidavit.**

Defendant has been charged by indictment with possession with intent to distribute fifty grams or more cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Discovery provided by the government indicates that Detective Ivo Louvado of the Baltimore City Police Department was notified by an unnamed informant during the second week of January, 2009, that a person known to the informant as "Raheem" was distributing large quantities of cocaine and heroin in Baltimore City. According to the informant, "Raheem" was a black male, 30-33 years old, and approximately 6'0" tall and weighed 150-170 pounds. The warrant affidavit recited that Detective Louvado "knows" that the individual "Raheem" was the

defendant Gerrod Davis "from a prior narcotics investigation." Louvado affirmed that the informant identified a known photo of the defendant as being "Raheem."

The affidavit goes on to describe two critical observations allegedly made by Detective Louvado (and other unidentified members of the Baltimore City Violent Crime Impact Division) between 10:10 p.m. and 11:00 p.m. on February 3, 2009, while conducting covert surveillance on the 300 block of East 31st Street in Baltimore. In the first, at 10:10 p.m., "Raheem" was observed walking from 307 East 31st Street to an otherwise unidentified "red Chevy, " where he met with an unidentified black male. After brief conversation, the two then walked across the street into 307 East 31st Street. The unidentified male emerged from the house one minute later, got into the red Chevy, and left the area.

The second critical observation alleged in the affidavit was that at 10:50 p.m., a person later identified as Galen Hyman drove into the same block, parked his "black Ford Truck," crossed the street and was admitted by "Raheem" to 301 East 31st Street, from which he emerged after 30 seconds, returned to his truck, placed drugs into his left pants pocket, and drove away. The affidavit recounts that Galen Hyman was stopped nearby by Detective Louvado and other VCID officers "for traffic violation," that he appeared nervous, that he was patted down for weapons, that he immediately admitted to having "pills," and that 15 heroin capsules were recovered from his pocket.[1]

---

[1] In his sworn affidavit made in connection with Mr. Hymen's arrest, however, Detective Louvado tells a very different tale. In this affidavit, Detective Louvado and the VCID detectives were not surveilling the 300 block of 31st Street but were instead "working plain clothes in an unmarked vehicle in the area of St. Paul St. @ E. North Avenue," a location fourteen blocks from 301 East 31st Street. In this version, Hyman was observed not on 31st Street but traveling southbound on St. Paul Street – fortuitously, with no front tag. Fortunately for Mr. Hyman, however, when his case was called for trial before the District Court of Maryland, the prosecutor announced

2

Based on the tip and the two observations, a search warrant for 301 East 31st Street issued. Defendant was arrested in the course of the search, and narcotics found during the search form the basis of the instant charges.

II.   **Defendant Can Clearly Make A Preliminary Showing That False Statements, Knowingly and Intelligently Made, Were Included by the Affiant in the Warrant Affidavit.**

Counsel's preliminary investigation[2] establishes that certain of the critical allegations in the warrant affidavit are simply untrue.

>   A.   **The allegation that Detective Louvado and his associates surveilled Mr. Davis conducting drug transations at 301 East 31st Street on the evening of February 3, 2009 is wilfully false.**

Neither Detective Louvado nor his associates could possibly have made the critical observations they claim to have made of the defendant between the hours of 10:10 p.m. and 11:00 p.m. on February 3, 2009. Defendant's evidence – in the form of both fact witnesses and cell phone records – will establish persuasively that during that period, the defendant was over 8 miles away, in the cocktail lounge of the Comfort Inn at 8801 Loch Raven Blvd. in Towson, Maryland. The defense will present witnesses who will confirm that he checked into the Comfort Inn earlier in the day. Authenticated records of Verizon Wireless, Inc., will confirm that Mr. Davis' cellphone, which was assigned number 443-682-1023, made three calls which utilized a cell tower at 5601 Loch Raven Boulevard between 10:26 p.m. and 10:35 p.m. on

---

that "the officer in this matter has not returned any messages from the liaison, and the State has no evidence." The case was dismissed on the first trial date.

   [2] Counsel anticipates that further discovery by the government and additional investigation will strengthen and corroborate the allegation that the warrant affidavit contained false averments that were essential to the finding of probable cause. Counsel seeks leave to supplement this motion.

3

February 3, 2009, and that the same phone made or received a total of 5 calls between the hours of 11:12 p.m. on February 3 and 2:05 a.m. on February 4. One or more defense witnesses will confirm that whoever made the calls was in the vicinity of the cell towers.

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that a defendant is entitled to a hearing if he or she makes a substantial preliminary showing that an affiant made a false statement in a warrant application, either knowingly and intentionally or with reckless disregard for the truth. See id. at 155-56, 171-72; United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). If at the hearing the defendant establishes by a preponderance of the evidence that material perjury or recklessness occurred, and that absent the false information the remaining portion of the affidavit does not establish probable cause, then the warrant must be voided and evidence gathered pursuant to it must be excluded. Franks, 438 U.S. at 156; Colkley, 899 F.2d at 300.

Without the allegations relating to the supposed observations by the police on 31st Street, there is essentially no cause for issuance of a warrant, much less probable cause.

> **B.  Detective Louvado falsely stated in the search application that the description of "Raheem" given by the informant matched the description of the defendant contained in the Criminal Justice Information System ("CJIS") database.**

As Detective Louvado well knew, the defendant Gerrod Davis could not plausibly be described as fitting the description allegedly given by the informant. Though the informant described "Raheem" being six feet tall and weighing between 150 and 170 pounds, Detective Louvado well knew that the CJIS System described him as being 5 feet, 10 inches tall, and weighing 215 pounds. Detective Louvado not only wilfully failed to include this discrepant

4

description of "Raheem" in the search warrant affidavit / application but also affirmatively misrepresented the CJIS record in stating that the database listed him as 5'10" tall and weighing 150 pounds.

The proposition that "Raheem" and the defendant are one and the same was critical both to the informant's credibility and to the proposition that he (and not someone else) was observed on February 3. Affirmatively misstating the CJIS description in order to shoehorn Mr. Davis into an identification constitutes a violation the Fourth Amendment.

> C. **The Affiant's Misleading Characterization of the Origin of the Investigation Culminating in this Search Warrant Effectively Hid From the Issuing Judge Earlier False Statements and the Investigation's Untoward Motive.**

Counsel's investigation has revealed that the police investigation culminating in Mr. Davis' arrest on February 4, 2009, did not commence with the informant's tip on February 3, 2009, as the warrant application implies, but with an abortive prosecution commenced against Mr. Davis by the same detectives – Louvado and Gladstone – five months earlier. The earlier case[3] bore earmarks remarkably similar to the instant case: drug transactions alleged by Mr. Davis through a car window were observed at 4:00 p.m. on September 19, 2008; Mr. Davis was surveilled driving to an apartment and obtaining a white plastic bag; he and his compatriot then met with a third person, and when they looked "as if they were going to run," they were stopped and questioned. Based on the foregoing, a search warrant for Mr. Davis' vehicle was obtained. Mr. Davis was able to establish categorically, however, that from 4:00 p.m. and 4:35 that day, he was five miles away at the Baltimore City Department of Finance, and could not possibly have

---

[3] State of Maryland vs. Gerrod Davis, Circuit Court for Baltimore County, No. 03-K-08-004523.

been seen by Detectives Gladstone and Louvado at 4:00 p.m. Defendant's evidence of alibi was apparently credited by the State's Attorney for Baltimore County, and the charges were dismissed.

The Franks rule also applies when affiants omit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading. Colkley, 899 F.2d at 300. As the Fourth Circuit recently held, a defendant is entitled to a Franks hearing on a challenge to an officer's affidavit if he makes a substantial preliminary showing that the officer "omitted material facts that when included would defeat a probable cause showing," and that "the omission was designed to mislead or was made with reckless disregard of whether it would mislead." United States v. Tate, 524 F.3d 449, 455 (4th Cir. 2008).

While an affiant seeking a search warrant is not necessarily under a duty to set forth the entire history of an investigation, where an affiant knows that an investigation of a person is under a cloud and has once been hobbled by a perceived lack of candor, he cannot blithely sweep the problems under the rug. Under the totality of the circumstances, it was surely less than candid to suggest that the investigation of Defendant commenced in January of 2009 and was essentially a clean slate.

**III. The Credibility of the Officers Involved in this Case is Suspect.**

The affiant to the search warrant affidavit was Detective Ivo Louvado. It is apparent, however, that in the investigation culminating in the warrant and even in the warrant's preparation, he was assisted by Detective Keith Gladstone and other members of the Violent Crime Impact Division. Indeed, the warrant affidavit refers to "the affiants" in the plural. Detective Gladstone, Detective Wayne Jenkins, and others assisted Detective Louvado with the

searches of 307 E. 31st Street and 5107 Benton Heights Avenue, and both Louvado and Gladstone worked together in September of 2008.

Counsel's very preliminary investigation has identified a number of troubling recent incidents involving Detective Gladstone and the officers assigned to work with him.

- Detective Gladstone, Detective Jenkins, and others caught surreptitiously on video tape storming a west Baltimore bar in December, 2008, without a warrant. They searched all of the bar's patrons, seized their car keys, searched their cars, all without the benefit of a warrant. Detective Jenkins – presumably with Gladstone's knowledge and acquiescence – signed charging papers under oath containing a completely fictitious story that was belied by the contents of the tape.

- Counsel is informed and does believe that Detective Gladstone's testimony before the Circuit Court for Baltimore City caused Hon. Brooke Murdock to declare him a liar, a characterization that the Judge later tempered at the request of the United States Attorney.

- In *United States v. Mason Weaver*, No. AMD-02-0491, Detective Gladstone's crew offered testimony at a suppression hearing relating to a search warrant which Judge Davis labeled "glaring falsity . . . a blatant lie."

Counsel is continuing to investigate this aspect of the Franks claims made herein. While concededly the Gladstone group's past prevarication will not in itself support a *Franks* claim, it is germane as corroboration.

For the foregoing reasons, Defendant Gerrod Davis respectfully requests a Franks hearing wherein he can demonstrate that material perjury or recklessness occurred, and that warrant must

7

be voided, and the evidence gathered pursuant to it must be excluded.

>Respectfully submitted,
>
>JAMES WYDA
>Federal Public Defender
>
>_____/s/_____
>GARY W. CHRISTOPHER
>Bar No. 24215
>First Assistant Federal Defender
>Suite 110l Tower II
>l00 S. Charles Street
>Baltimore, Maryland 21201
>(4l0) 962-3962 (p)
>(410) 962-0872 (f)
>Email: gary_christopher@fd.org